May it please the Court, Dominic Carollo for Defendant Scott Timber Company, Roseburg Resources Company, and RLC Industries Company. I'd like to try to reserve five minutes of my time for rebuttal. This case should be dismissed because anticipatory pre-violation notices do not satisfy the pre-suit notice requirements of the ESA. Plaintiff's complaint alleged a single ESA violation premised exclusively on the 49-acre Benson Snake Project. That project was not planned nor initiated until 2016, more than two years before Plaintiff's 2014 notice. But just to clarify, is your position that an anticipatory notice is never appropriate? That's our reading of Gwaltney. I know the plaintiffs rely on Roseboro because Roseboro recognized that there was a legally cognizable action for a future imminent violation of the ESA. And so we said, I think, in footnote 13, I think, at most, there has to be notice of an imminent, a concrete and imminent violation, and that's missing here as well, Your Honor. Well, but how is it possible then that we have these other cases, including Marbled, Marlette, and Roseboro, where we permit future injunctions for future violations? So if that's permissible, why wouldn't an anticipatory notice be sufficient as well? Yes, Your Honor. So one thing I want to point out is Roseboro was not a notice case, and, in fact, there was a four-month time period in between the time that the defendant in that case provided notice of the timber harvest and when the plaintiff ultimately filed suit. Here there was a 12-day gap, and that's really the issue, is that 12 days after my client filed notification to harvest, they were sued. So it's a much different case than Roseboro, where the notification to harvest was issued and the lawsuit was not initiated for four months later. That's, in this Court's opinion, the timeline of the Roseboro case. So how does that change anything? Because I don't think it presented a notice problem. Like, we wouldn't dispute that if plaintiffs had provided pre-suit notice, once the timber harvest plan had been noticed, once my client had initiated the project, that they could have provided valid notice for a future violation of the ESA at that time. But they could not in 2014, more than two years prior. Because at that time, I mean, there was no project, there was no cause of action for them to pursue. Right, but there was a lot of backstory here, right? This wasn't a situation where somebody was just sending blanket letters indiscriminately. There was a huge backstory to all of this with the prior injunction and then the sale of this property. So doesn't that make it a little bit different? I don't think so because, again, there was no allegation of any past violation by my clients. So I think that would take this case law and Gwaltney and any of the other cases that are cited in the briefs well beyond the scope of that case law in the sense that there was no allegation of a past violation by my client, a past violation by an independent third-party actor. I don't think any case law at this circuit or any other supports that as being a basis. But what is the principle you're trying to vindicate here? Because you knew you had this property. Everybody knew there was an argument that there was endangered species on this property. When you got the notice, your client then did an investigation into that very issue. So from a practical standpoint, it seems like everybody knew and the notice served its purpose. So what is the point of this argument? It seems very technical to me. Yeah, and I think, well, I would disagree in the sense that it only focuses on one side of the congressional purpose. I'm glad you asked about the congressional purpose because I think that was really the district court's error. It's exclusively focusing on whether or not my clients understood that they would be sued by plaintiffs. But that's not the only purpose of pre-suit notice. And our position, and we briefed this, is that there has to at least be an allegation of a plausible violation that the service could plausibly enforce, and that was clearly absent here. And Gwaltney and Hallstrom both— Yeah, I mean, put yourself in the— So in the overall sufficiency of the notice inquiry, part of what this court has said is you put yourself in the shoes of the alleged violator and what they would have understood. I would suggest put yourself in the shoes of the Fish and Wildlife Service in 2014 when they've gotten a letter from plaintiffs saying, you've bought this property, you're a logging company, we think that it's reasonably certain you're going to log this someday, and when you do, we're going to sue you. I mean, the Fish and Wildlife Service isn't going to send, I would submit, is not going to send my client notice that they're going to bring an enforcement action against them just because they're a timber company that bought a piece of property. There's no plausible action, there's no plausible claim alleged in the notice letter for them to pursue. And I think that's a lot like Hallstrom, actually. Because in Hallstrom, there was no dispute that the alleged violator had gotten notice, right? So they got notice, but there was no notice given to the EPA and the DEQ. And so the district court said, well, that's very hyper-technical. Let's go ahead and stay the case for 60 days. You go ahead and provide notice to the EPA and DEQ. We can see if they take action within 60 days. And if they don't, then this case will proceed. And the Supreme Court said, no, that's not good enough. There's strict compliance required. And that's really the problem here. I mean, there was no notice of a claim that could have plausibly been pursued at that time. So it completely defeats that purpose. But your client then went out. You knew what the species was. You knew the particular section. You knew what the violation alleged would be. And then before you did any logging, you went out and hired these surveyors. So clearly you knew what was on the table at that point, right? Right. So, again, that's focusing on what my clients knew. And what I'm suggesting to the court is that there's two congressional purposes. And, yes, I mean, my client acted prudently. I mean, they told them that they had no present plans to log, that they were going to hire consultants to advise them, and that whatever they did do in the future would comply with the ESA. I mean, really my client did nothing but act prudently here in response to somebody saying they were going to sue them. But, again, if we go back to Hallstrom and Gwaltney, it really runs afoul of what the Supreme Court was talking about in that case. And, you know, when Hallstrom was talking about this issue, they cited back to Gwaltney because they were emphasizing the fact that, I'm quoting, to allow government agencies to take responsibility for enforcement of environmental regulations. And Gwaltney really emphasized that, that the congressional purpose of the pre-suit notice is that citizen suits supplement, not supplant, regulatory enforcement by the federal agencies. And that's really what the problem here is. So, and, again, I think that that's consistent with some of the other courts that have considered this issue, particularly then-judge and now-Justice Kavanaugh's decision in the Friends of Animals v. Ash case. Now, you know, plaintiffs say that that's just for procedural deadlines for a G1C action. And while that's true of that case, it's not true of all the cases we cited. The South Yuba River case from the Eastern District of California, that was a G2A1 case for violation of Section 7 duties. And the court there clearly said is that, yes, you have a single claim. It alleges a Section 7 violation, and you're challenging both the 2002 and 2007 BIOP. But your notice letter was sent prior to the 2007 BIOP being released. And, therefore, your notice was inadequate. So that was under the same citizen supervision we're talking about here. And I would suggest to you-Counsel, what's the remedy that you seek? Is it just dismissal of the suit? Yes. If we agreed with you on the notice question, said it was jurisdictional, not satisfied, then we dismiss the suit, and then what happens? They file notice, and we start all over again? Well, I think that presupposes that my client would go forward with the lawsuit. I mean, it's been permanently enjoined. It would have to file a new harvest notification under Oregon law to be able to proceed. So I don't think we're there yet, Your Honor.  There could be if my client decided to proceed. You know, I'd point out just to show you just how sort of hypothetical and speculative the notice was. My client bought two properties, the Adams Ridge property. So we're now-this notice was sent in 2014. It's 2024 now, right? What if my client filed a notification for Adams Ridge today, 10 years later? I would submit that it would be ridiculous if we would say that we'd point back to this 2014 notice and say that that was sufficient to provide notice of a claim that the Fish and Wildlife Service could enforce against my client. It completely supplants them as an enforcer of the regulation if we allow plaintiffs to file these anticipatory notices. And again, I think it's a big-this Court needs to look at it not just in the context of a future violation of Section 9 by a private party. The Court has to look at it, too, in the context of federal agencies under Section 7, because those claims can be brought under there, too. That was clear in Justice Scalia's opinion and Bennett v. Speer. And it doesn't make sense that you would allow anticipatory notices of pre-violations for Section 9 in a private party, but not allow them in a Section 7 context against a government agency. Let me just ask another twist on the notice. Although we've used the word jurisdictional in some of our cases, the Court, of course, has cautioned us that we're not supposed to be using jurisdiction for everything and that many things are claims processing rules and not true jurisdictional rules. Why isn't this a claims processing rule rather than pure jurisdiction? I think in the organic cannabis case, I believe, the first factor they mentioned was that the statute there used the magic words jurisdiction. And this citizen suit provision does as well. In 1540 G, it says the district court shall have jurisdiction in talking about the types of suits that may be brought. So, I mean, it meets that first factor under the organics. Well, but that's kind of a different kind of jurisdiction in the sense of under the statute, of course, federal statute. So I don't see that as answering the question exactly. Well, I think textually 1540 G is all about conferring jurisdiction on circuit courts and what needs to be happened to commence the suit and have jurisdiction in the district court. So, I mean, Your Honor, respectfully, too, I do think we think it is jurisdictional, but I think in this case it's sort of academic because we didn't waive the issue. Even if it is a claims processing rule, we timely raised the issue once we got back from this court reversing the district court on the preliminary injunction. The plaintiffs filed an amended complaint, and we responded immediately with a motion to dismiss, fully briefing this issue. But I don't think that, of course, suggests that – I don't think it would be academic if we treated it as claims processing because you appealed on the injunction, and in the court below during that proceeding, you raised this – so if it's a claims processing rule and it wasn't appealed, it would seem to me it would have been subsumed in the Ninth Circuit's first appeal and therefore waived. Well, I guess two points on that. One, I don't think it would have been because I think it's black-letter law under the Rancher's-Cattleman case that it's not waived by not appealing at a preliminary injunction. So that's our reading of the case law. We briefed that. I mean, secondly, it would be kind of unfair to my client because this case – that it's jurisdictional in numerous, numerous cases. So that would present quite a pitfall for my clients if this court were to hold that. I would also point out that, I mean, Hallstrom didn't particularly decide whether it was jurisdictional or not. It sort of left that question open. But there was no question what the remedy needed to be in that case, and that was after a full trial on the merits as well. So – and again, I would really focus the court's attention on Hallstrom because I grant you it's not the exact same situation, but it's very similar. I mean, the same type of arguments that are being raised here were raised there, that it would have been a waste of judicial resources, that strict compliance shouldn't be required, that it really doesn't matter whether the EPA and DEQ got notice because they probably won't enforce the law. The Supreme Court was really clear that all those things do matter. And again, they were – and the Supreme Court pointed back to Gwaltney, and I think Gwaltney also addressed an issue that sort of underlies the plaintiff's argument and the district court's focus. In that case, the plaintiffs sort of pointed to this idea that, well, notice is just so that you could prize somebody that they're about to be sued. Congress thought that was something they should do. And the Supreme Court said, no, that's not the only reason. There's two reasons. It's the opportunity to abate and so that the government can exercise its primary jurisdiction to enforce, and again, emphasizing that citizen suits are meant to supplement and not supplant. So again, for all those reasons, we think that this court under Gwaltney and Hallstrom has to dismiss this case. I see I don't have a lot of time with respect to what I wanted to get to or reserve time for rebuttal. I would just say that if the court does reach the merits, we think the district court committed legal error in failing to require plaintiffs to prove that the 49-acre unit in question is essential, such that without the habitat, injury to specific identifiable members of the species was both reasonably certain and imminent. So because here the district court did not require proof of actual injury and did not require proof of the necessary links in the chain of causation, this court should vacate and remand on that basis, if it doesn't dismiss on the basis of notice. So if you would, I'd like to reserve the rest of my time. Okay, thank you. Good morning. May it please the Court, my name is Daniel Cruz, and I represent the plaintiffs in this case. The defendants have taken the position that when they purchased the Benson Ridge property, they did not have any plans to log it. That is inconsistent both with the defendant's sworn testimony and with the district court's findings. The defendant's representative testified at trial that Benson Ridge is specifically designated for timber production and that they did not purchase the property, quote, for any reason other than to grow and log timber. The district court made findings consistent with this testimony, and for reference, that sworn testimony is available at the supplemental excerpt of records, pages 9 and 10. The district court's findings are at pages 129 and 137, in which the district court specifically stated, quote, the defendants, as logging companies, purchased the Benson Ridge for timber harvest. The court continued that the defendant's participation in the auction meant it planned to cut down trees in the Benson Ridge parcel. But a plan to cut down trees wouldn't be a violation. That's the statutory term. It's 60 days. It's prior to 60 days after written notice of the violation. So what's the violation? That's correct. The violation is the threat of future harm at that point. And the case law, and I'm going to discuss the Roseboro decision and the Marble and Murelet decision in some more detail, but what those courts have explained is that the threat of harm is itself harm and that the threat of harm is actionable under the Endangered Species Act and that an injunction may be issued to prevent the threat of future harm. And so because the notice — Could this be triggered just by people thinking about logging? It's not — I don't think it's just merely by thinking about logging. It's the fact, as the district court found in this case, that this is timberland designated specifically at Timberland, that the defendants are timber companies, and they purchased this according to their own sworn testimony for one reason and one reason only, which is to log it. And if an injunction, as Roseboro and Marble and Murelet decisions discuss, if an injunction may issue based on a threat of future injury, then it necessarily follows that notice can be given based on the same types of future harm. Notice is, by definition, provided before a complaint is filed, and a complaint, by definition, comes before an injunction may issue. So given the practicalities and realities of federal litigation, the standard that an injunction may issue based on the threat of future harm necessarily allows notice to be given based on the same, if not even a more tangential threat at that stage, because it, by definition, happens much earlier. Why, you know, in 2016, when Scott says they're going to log this Benson Snake unit, why didn't you give another notice at that point? Because that's pretty concrete. Understood. At that point, once they provided notice to the State of Oregon, they had only to wait 15 days before they could start logging. This is a 49-acre timber sale unit. It would take a matter of days to cut every tree down in the parcel. And so if we filed notice at that point and then waited 60 days and then filed the claim, the case would be moot before it was ever right. And that's expressly acknowledged in this Court's decision in the Roseboro decision. It says that the defendant's approach of requiring a past injury or an ongoing injury is antithetical to the fundamental purposes of the Endangered Species Act, to prevent species decline before the harm occurs. So I think your friend on the other side's concern is a timber company purchases timber land, and we all know why it's purchasing it, but does that mean your clients could just send out blanket notices all over the place and sort of secure the right to later sue many, many years into the future? What are the limits on this? Obviously, I think every case needs to be viewed on a case-by-case basis. And the case law, including the Kalamazoo Ski Wildlands case, describes an obligation to look at the overall sufficiency of the notice. That is necessarily a fact-based inquiry. And so there's certainly no hard-line rule that says notice is stale after X period of time. The Endangered Species Act itself said notice must be provided at least 60 days before suit is filed. It does not say that it must be provided at most 5 years, 10 years, or anything like that. So there's no back end to the language of the Endangered Species Act itself. The 60 days is a minimum, not a maximum. Could it be 5 years? Could it be 10 years? I think, again, it's a case-by-case inquiry, and I think it depends on the substance of the notice, the context of the notice, the history, the information that the parties had at the time, as well as the actions that the recipient of the notice took. And so the case law, including the Kalamazoo Ski Wildlands case, describe a few different things for the courts to consider in viewing the overall sufficiency of the notice. One is the letter itself. What does it say? What level of detail does it provide? The other is the information that the defendants have. And that can include the history and context and the defendants' own knowledge of what their plans are, their own actions, their own property. And the third factor the court can consider is how did the defendants respond to receiving the notice? And the district court in this case did specifically look to that issue. It found that... Excuse me. ...that after receiving plaintiffs' notices, the defendants retained a group of experts and surveyors. And according to the sworn testimony submitted by the defendants, they took these actions to, quote, investigate plaintiffs' allegations and to help inform the company's strategy and preparation for anticipated litigation. What is your response to Mr. Carollo's argument that all that's well and good, but that's only half the equation? Yeah. And you have to look at the agency. Yeah. So under the Endangered Species Act, the citizen supervision and the notice requirements, there is an obligation to forward a copy of the notice not only to the alleged violator, but to the Fish and Wildlife Service in this case. We did so here, and the court made findings that that was submitted to them. But the district court also noted that in receiving that notice, the Fish and Wildlife Service is not required to take any particular action. They're just not required to. That's discretionary on their part at this point. So the lack of action by Fish and Wildlife Service is not evidence of what they believe the notice to say or whether it was sufficient. In fact, under the Endangered Species Act citizen supervision, if the Fish and Wildlife Service takes remedial action themselves, then citizen suits are then precluded. So if action had been taken by the Fish and Wildlife Service, the citizen supervision would be removed. So the 60-day notice serves to give Fish and Wildlife notice and gives them an opportunity to come in and act on behalf of the government. Back to your point about the – as I understand, you told me that if they – defendants gave notice of their intent to – that they were intended to log this. That's correct. They could have logged it within 15 days. Yes. That's the Oregon permitting. That's the Oregon standard. That standard doesn't necessarily apply anywhere else, right? And so relying on the standard, I think, is misplaced. At that point, your clients surely could have come in and sought for a preliminary injunction, a hold on – for the additional – for the marginal 45 days to allow Fish and Wildlife to act and to allow you to file a suit. That's incorrect, respectfully. Unfortunately, the case law in this circuit has explained that the 60-day notice requirement is a conditioned precedent to filing suit. And other cases where plaintiffs have attempted to file notice before the 60 days is up and then seek a preliminary injunction have been dismissed because the plaintiffs in those cases did not wait the requisite 60 days. So there was no additional – Yes, but if you're going to have irreparable harm, this seems like a fairly easy case. I would agree with you. Unfortunately, it does not appear that that remedy was available to us. The court's decision in Roseboro – Let me just understand. You're saying that given the Oregon peculiarity of the 15 days that you couldn't go in for an anticipatory preliminary injunction the minute you heard or found out that they were going to log on that Benson tract? Under the terms of the Endangered Species Act, we could not do that until 60 days had passed since we filed a pre-suit notice. Because you couldn't – you'd need to file a suit, in other words, to have your preliminary injunction. That's correct. Okay. That's correct. Your Honor, in Roseboro, this Court was asked to interpret Gortney in the same way that defendants now ask the Court to interpret Gortney. There, the defendants argued that in order to bring a claim for future harm to a species, plaintiffs would need to establish that there was some past or ongoing injury as well. And this Court rejected that. It stated, Relying on Gortney, Roseboro nevertheless insists that to state a claim under the Endangered Species Act, plaintiffs must allege either a past or current injury. Roseboro misreads Gortney. The Court then very conclusively stated that Section 1540G, which is the Citizen Supervision of the Endangered Species Act, does not contain any requirement that claims of a future injury to wildlife be based on a past injury. It continued, Nowhere does Congress indicate that a plaintiff standing to enjoin such grave threats is contingent upon showing of a past injury. Right. Okay. So that tells us that some anticipatory notices are permissible. It doesn't necessarily answer the question of what the criteria are for deciding which ones are permissible and which ones are sort of too generic or too indefinite. That's correct. And I think that the question about the sufficiency of the notice are described in other cases, the Klamansky Wildlands case in particular. And in that case, the Court explained that notice is not required to list every specific aspect or detail of every violation. That sufficiency turns on whether the notice provided information that allowed the defendant to identify and address the alleged violations, considering the defendant's superior access to information about its own activities. So here there's a whole history of the land being subject to a prior injunction and then the land being sold by the State. If we didn't have that here, if we didn't have that here, would this be a different case? I think there would certainly be less context for the Court to consider, and that could be determinative of the overall sufficiency of the notice. But certainly in this particular case, that context played a major role in the district court's decision. I mean, the district court found that the defendants – that any reasonable entity in the defendant's position would have understood the nature of the allegations outlined in the notice. And the district court also found that the defendants in fact understood the nature of the allegations as evidenced by the actions that they took to retain surveyors, to retain experts, and to prepare for litigation. By their own sworn testimony, the actions that they took were in preparation for litigation. So I understand that there may be a case where notice is too anticipatory if it's, you know, so vague and so ill-defined and so far in the future, but that's not the circumstances here. The defendants purchased this property for one reason and for one reason only. When they purchased the property, they immediately hired experts and surveyors to do this work. That was part of a timber sale planning process. They said that they did this in order to prepare for anticipated litigation and to consider their options for logging timber. And then as soon as those surveys were done, they proposed – they drew a timber sale boundary on a map and proposed to move forward and submitted that notice of operation. So this was really one single ongoing planning process. I understand that they easily could have hired the surveyors long before they filed any plan to log and without you giving them notice. They could have known what was coming once they proposed it, but it would be very responsible of them to hire surveyors to say, you know, have we got a reasonable chance at being able to log this? And if the surveyors come back and tell us that we've got, you know, Well, that's exactly what happened in this case. The defendants did hire surveyors. They conducted surveys in and around the Benson Ridge property, and they found that marbled mulelets were occupying that particular area. They detected sub-canopy detections of marbled mulelets, and they're now planning to log it anyway. And this was part of the district process. But once they filed the plan, then you know that there's going to be a violation because until that point, they haven't figured out whether they're going to do the right thing or not. Well, I understand that the specifications of their logging operation were not finalized until at some point shortly before they filed a notice with the state of Oregon. But their plans to log, as the district court found, existed at the time they purchased the property. And that's a finding that the district court made, and it's entitled to substantial tax. Plans are not operations. Plans are just plans. That's correct. I think it's important to remember how broad the take prohibition is under Section 9 of the Endangered Species Act. In the Sweet Home decision, the Supreme Court explained that take is defined in the broadest possible manner to include every conceivable way in which any person can take or attempt to take a threatened or endangered species. The court explained that take is not limited to only deliberate actions. Take need not be purposeful or willful. Take can be prospective and indirect. And so in light of that, it can't follow that only named and planned projects are subject to the citizen supervision. The citizen supervision allows plaintiffs to seek an injunction against negligent acts and omissions under the definition of harassment within the Endangered Species Act and to seek an injunction against activities that are not, to seek an injunction against take that is not occurring willfully. And so there's nothing in the Endangered Species Act that specifically requires plaintiffs to show that the activity in question is planned or named or even purposeful. And so our position is that if an injunction can be issued against the threat of future harm, that the notice requirement, which necessarily precedes that burden of proof, should be a lower standard. What's your position on the jurisdictional nature of the notice requirement? Yeah. Your Honor, the plaintiffs have acknowledged that this court has described the 60-day notice requirement as jurisdictional. However, the Supreme Court, as was mentioned, has instructed courts to take a harder look at whether requirements such as this are truly jurisdictional or whether there are claims processing rules. The court in Arbaugh explained that the court wants to bring some discipline to the use of the term jurisdictional. The defendants are correct that even since Arbaugh, this court has continued to describe 60-day notice requirements as jurisdictional, but it's done so without undergoing an Arbaugh analysis. You mean we typically just refer back to that Siskiyou? Isn't that the older case of Siskiyou? That's exactly right. And so the courts since Arbaugh have continued to say that notice is jurisdictional, but they haven't analyzed the issue under the Arbaugh analysis. It's just referred back to existing case law. To our knowledge, this court has never been asked and has never undertaken an Arbaugh analysis in relation to the 60-day notice requirement. However, other circuit courts have, and the 1st, 3rd, 5th, and 11th circuits have all held since Arbaugh that 60-day notice requirements in related environmental statutes are in fact claims processing rules and not jurisdictional. Our position is that if the court were to look at the Arbaugh factors and the Endangered Species Act 60-day notice requirement, that it should find that notice is not jurisdictional. The defendants cite to the cannabis decision where this court did an Arbaugh analysis. However, that was not for a 60-day notice requirement. That was a different statutory provision and an entirely different statutory requirement. And in that case, the court found that jurisdiction... The relevant issue there was whether a complaint was timely filed. And the timing was framed in the statute as a jurisdictional issue. The statute says that the court only has jurisdiction to hear timely filed cases. And so because it was framed specifically in jurisdictional terms, that court described it as in fact a jurisdictional issue. However, in this case, the citizen supervision and specifically the 60-day notice requirement does not speak in any jurisdictional terms. Now, the defendants point to other sections of the citizen supervision that reference the word jurisdiction, right? And I believe it's 1540G... I'm sorry, 1540C and then 1540G1A. However, the notice requirement that we're discussing here is in 1540G2A. And I know that's a different... We're talking now about a different subsection, not just a different section. But that's exactly what the Supreme Court found was dispositive in the Gonzalez v. Thera decision. There, the court explained that the Congress's use of the term jurisdiction in other subsections meant that it could have spoken in clearer jurisdictional terms for a different sub-subsection. So if the court has any questions about whether jurisdictional terms must be used in the same section or subsection or sub-subsection, the Gonzalez v. Thera decision is instructive. Unless there are any other questions regarding notice, I'd like to briefly touch on the merits of the case at trial before my time is up. I wanted to ask... Yes. This does go to the merits, but because you mentioned harassment, the district court found harm, but I don't think the district court found harassment. Are they one and the same, and is that finding supported in the record? Yeah. The district court... They're not one and the same, but I think there could be substantial overlap, okay? Both the definition of harm and definition of harassment describe a significant impairment of essential behavioral patterns, including breeding, feeding, and sheltering. And here the district court found that that was, in fact, the case. And I would correct, Your Honor, that the district court did make an explicit finding that the proposed logging operation would both harm and harass murrelets, as those terms are defined by the Endangered Species Act. And in your view, it's the same factual underpinnings? It is. When the... The evidence in the record in this case was that the defendant's logging operation would remove 49 acres of occupied murrelet nesting habitat. And again, just to clarify, we're not arguing that any modification of any habitat is per se proof of take. The district court relied on the fact that this particular area is occupied by marbled murrelets and used for nesting purposes. And it was that determination, rather than any kind of general correlations that the defendants discussed, that led to the district court's decision here. So the fact that marbled murrelets... Maybe I misspoke. The district court's factual findings do talk about harm, but then they do mention... Or it does mention harassment in the legal conclusion. That's correct. So is that the outflow of findings on harm? I think they're very closely related. The district court found that there was a significant impairment of essential behaviors, including breeding, that the logging operation would cause a definite and imminent threat of future harm to murrelets by removing their habitat and by fragmenting their habitat. So there's actually... There's two things that the district court discussed. There's the removal of habitat, which relates to the 49 acres, and then there's the fragmentation of the remaining forest habitat as well. And I think the district court found some distinction in those. But when murrelets return to their nesting habitat... And I see that my time is up, but I'll just finish answering the question from Your Honor. When murrelets return to this habitat, they will, given their site fidelity, given the fact that they return to the same places over and over and over again, even when their nesting sites are lost or degraded, the removal of that habitat will continue to affect them for years and years and years. They will come back, and they will fail. They will come back, and they will fail. And under these circumstances, the unique facts of this case and the unique characteristics of this species, that constitutes both harm and harassment under the endangered species. Before you sit down, can I just ask you one quick question on the notice, which is, if the notice here was inadequate, let's assume, what would your clients do to try to compensate for that? Would you send repeated additional notices? Would you be completely out of luck? What's your position on that? I don't think that there's anything we could do. By defendant's argument, they get to submit a notice to the state 15 days before they start logging, and we have to provide notice at that point and then wait 60 days. And the logging operations are going to be done before that 60 days is over. I think what the defendants are doing is trying to carve out an exception to the Endangered Species Act that allows them to freely violate for up to 60 days before any legal action can be taken under the citizen's supervision. And you would— Would they do anything that Fish and Wildlife would decide to do? Fish and Wildlife has the discretion to take action, but they're not required. And do you have any remedies in Oregon courts or before Oregon agencies? If they file, they have 15 days, and it's automatically approved, notwithstanding the damage it might do to them? That's correct. In California and Washington, there's a much more robust process for planning and approving timber harvests. In Oregon, there's basically none. They don't even have to seek a permit to log. They just have to provide notice, and they go in and do it. So there's no real back-and-forth between the timber companies and the regulatory agencies. The notice is provided, the logging begins, and it's done very quickly in this particular case. Does Oregon state law offer any protection for the species? Oregon state law— Marbled mulets are listed as endangered under Oregon state law, but the take prohibition there is very different. And I'm sorry that I haven't fully vetted the options that my clients may have. I will have, then, some kind of temporary relief, a TRO, in Oregon state courts under Oregon law. It is theoretically possible. I'm not aware of it. However, the take prohibition is a federal standard. It applies in all 50 states and applies to all people. That includes companies, the government, and individuals. So I don't think the standards for when notice can be given of unlawful take can be hinged on local standards or other remedies that might be available in different locations. Given that Oregon has a procedure different from California and Washington, I mean, how does that inform our judgment if this is a national rule? Why would we have to take some special notice of what the consequences might be under Oregon's procedures when Oregon seems to be unique in the Northwest? Well, I think it shows that the court should not take those things into consideration. In other words, the standard is you can't take an Endangered Species Act. There are no exceptions when there's another remedy available in a different jurisdiction or different venue. Take is unlawful and strictly prohibited. And as this court explained in the Roseboro decision, the purpose of this prohibition is to prevent harm to the species before it occurs. I'm still surprised that you would think that a TRO would not be permissible in federal court just to hold for 45 days until you could file the suit or to allow fish and wildlife, in the meantime, to make a decision. I don't understand that. Is there precedent for that? There is. I'm sorry, I don't have a citation for the court. I'd be happy to submit a supplemental memo just outlining that particular point, but I believe that our case is directly on point. And in light of what this court has described as a jurisdictional requirement, which I know we're asking the court to change in this decision, but it is certainly a conditioned precedent to suit, and that's clear in the Hallstrom decision. Are there cases involving preemption of these state quasi-ESA provisions in the federal law? I'm not aware of them. But, I mean, the Endangered Species Act preempts other state laws. I mean, that's clear, right? And the Endangered Species Act applies in all 50 states broadly to all individuals. And so the sufficiency of notice, I don't think, hinges on whether there's some other available remedy at law. Okay. Thank you, Mr. Gray. Thank you very much for giving me some additional time. I appreciate it. Thank you. Thank you, Your Honors. So to your question, I think really what the plaintiffs are suggesting is that you do create an organ rule, not that we are trying to create an exception. And I will just say, I think Hallstrom answered this question. And if you permit me, I'd like to read a passage from page 30 in Hallstrom. So there, I'm quoting now, when they say they, they're talking about the plaintiffs. It says, the Court says, They assert that courts would be precluded from giving essential temporary injunctive relief until 60 days had elapsed. Although we do not underestimate the potential damage to the environment that could ensue during the 60-day waiting period, this problem arises as a result of the balance struck by Congress in developing the citizen suit provision. And Congress did that in the ESA. So you agree with your friend across the aisle that if you could log within 15 days that you could log and there isn't anything that anybody could do to prohibit it unless fish and wildlife got in. Well, I think that their argument that it's not jurisdictional might open the door for that. I think that that's the intention, as he said. I mean, if it's not jurisdictional, it may not be as much of an absolute bar. But, you know, again, that also presupposes the Fish and Wildlife Service doesn't step in and do something, right? And, again, Congress thought about that. Since you've taken the position that it's jurisdictional, let me hold you to your argument. So if it's jurisdictional, and your client would be allowed to log within 15 days, do you agree on that? I do agree with that, yes. You agree with that thing, log within 15 days of filing the order. And unless fish and wildlife stepped in within 15 days, there's nothing anybody could do to prevent your client from logging. Other than potentially state court remedies. Mike, Mr. Cruz, I'm not prepared to speak what all those might be, but there could be state court remedies. But you certainly would fight tooth and nail on jurisdictional grounds if they asked for a TRO just for 45 days just to get you to the point where they could file a citizen suit. I think most defendants would, and I think they would point to Hallstrom. Yeah. And, again, though, I think Congress struck that balance. Because in G2C3, Congress provided an exception when essentially there's an extinction risk to a species. So that if, like, the secretary wasn't acting fast enough to list the species, Congress would balance. And that's a pretty narrow exception. Right, it's a narrow exception, but for basically an extinction risk. But when it just came to the other violations ESA, Congress chose not to provide an exception to the 60-day notice. That's my point, I guess. Well, I think that's because they're thinking nobody's going to rush in and start cutting. Congress may have done this balanced. I'm not sure they were thinking about the 15-day Oregon rule. Maybe. And I know I keep harping on it, but, I mean, what I just read from Hallstrom, the Supreme Court was presented with that very dilemma, and they made a ruling on it. We would respectfully submit that this case is controlled by Hallstrom in that respect. I do want to comment, I mean, partly, you know, I would like to comment, because they focused a lot on, they say, the testimony of Mr. Phil Adams. He was not an FRC P36B deponent. The witness that we presented for that was most knowledgeable about defendant's plans with Dana Chose. And if you look at ER 1197 through 98, he testified at trial that it's got timber company. It's not that they do sometimes buy properties and hold them and then sell them for other purposes, like conservation, if there's not a timber production value there to have. And I would also point out that in this case, at docket, unfortunately it's not in the excerpt of record, but at docket number 142 of the district court's record, we filed a notice with the district court following trial explaining to the district court that my clients had actually sold an option to purchase this parcel and nine other completely unrelated parcels for mitigation, non-production, non-timber production purposes. So, I mean — Was that filed after the district court's order was issued? Yeah. It was long after. It was, but I'm just saying that we told it — I understand. Our suggestion to the district court is you can't just assume that a sophisticated business buys property and they can only do one thing with it. I mean, landowners will do what's best to do with the property from a financial standpoint. And if it has values that are higher and better for other uses, they will sell the property for that, hold it as a long-term investment, sell it. I think this whole idea that because they're a logging company, we can assume that they're going to log and violate the Endangered Species Act proves too much. Is there any other commercial use of the property besides logging? Used for setting up a KOA campground or — Yeah, actually, I mean, it's not in the record, but yeah. Actually, most — so, forestry land zone can be used for, like, some of those types of purposes. Is this area suitable for that? Campers, hikers? Yeah, I mean, I know, like, from my personal experience, like, you can do, like, a hunting outfit or camp or something for hunting. I mean, a lot of people hunt in the Elliott State Forest where this property is located. The other thing I'd like to point out is that we're talking a lot about what the notice says. I would really ask the Court to focus on what I'm saying, is that there are two sides of the equation. At a minimum, this notice fails the second side of the equation for enforcement. The other issue, though, is that if you look closely at the notice itself, there's no allegation that logging was imminent. And I think at a minimum, there has to be that imminency, right? I mean, that is the basis for legal action under Roseboro. And if you look closely at their notice, it says that logging is reasonably certain to occur because you are a logging company. But there is no allegation that it's imminent. And, in fact, I mean, they did not take any – we told them in response that there was no plan. It wasn't imminent. They filed no such lawsuit. There was no claim for them to provide notice of until 2016. And because they failed to provide notice, this Court should dismiss for failure to comply with the 60-day notice provision. Was there a situation in which they would have been on notice of this prior to this whole 15-day period? Because it seems that once – the only reason they have to know this is actually definitely going to happen is when you make that filing that then triggers the 15 days. Is there any reason to think that there was some window earlier when they could have acted? I think it's plausible, yes, Your Honor. I mean, so one of the things we've vigorously disputed in district court is their standing. But they provided sworn testimony that people visited and used and enjoyed using in this area immediately adjacent to it. Well, I mean, if – for instance, I mean, it's common for a timber company to mark the boundaries of a unit before they're going to log and before they were going to go in and file a notification. If they were actually present using and enjoying the property as they say they do, they could have observed preparations to harvest that might have preceded a notice that would have perhaps been evidence for them to believe, reasonably believe, that harvest was imminent. Does the record show that that was the case here? No, no, no. But I guess I understood your question to ask me a hypothetical. I'm just saying that, hypothetically, I think that they could. If they cared about the area as much as they say they do and they observed equipment coming in or whatever, that could be evidence that would justify an allegation that harvest is imminent, and that would be before the 15-day notice. And again, plaintiffs, you know, I mean, they established standing according to the district court. They claim that they used and enjoyed the area. So they should be there and they should be able to see that occurring if that was happening. Okay. We let you go over your time, but let me see if there's any further questions for you. Mr. Carrillo, thank you very much.  Mr. Cruz, thank you both for your presentations this morning. This matter is submitted.
judges: McKEOWN, BYBEE, BRESS